where nothing more is shown than different citizenship at one stage of the proceedings, and the same suits to be removed at another stage, when prejudice, local influence or other matter is shown. Now, this is precisely what is accomplished by the joint operation of the act of 1875 and subdivision 3. The former requires the application for the removal of all suits, including a suit between a citizen of the state in which it is brought and a citizen of another state, when nothing more than different citizenship appears, to be made before or at the time at which the cause could be first tried. The latter allows the application for removal of such a suit to be made at any time before trial or final hearing, when it also appears that the applicant is not a citizen of the state wherein the suit is brought, and that, owing to prejudice or local influence, he could not obtain justice in the state court. But were the consistency between the act of 1875 and of subdivision 3 less apparent, I should still be constrained, in view of the leaning of courts against implied repeals, to hold that the latter is still in force.

"To repeal a statute by implication, there must be such positive repugnancy between the provisions of the new law and the old, that they cannot stand together or be consistently reconciled." Wood v. U. S., 16 Pet. [41 U. S.] 342; McCool v. Smith, 1 Black [66 U. S.] 459; U. S. v. Tynen, 11 Wall. [78 U. S.] 92; Hartford v. U. S., 8 Cranch [12 U. S.] 109; Brown v. County Com'rs, 21 Pa. St. 37; Bowen v. Lease, 5 Hill, 221; Daviess, etc., v. Fairbairn, etc., 3 How. [44 U. S.] 639; Potter's Dwar. St. 154; Sedg. St. & Const. Law, 129. In Wood v. U. S., Mr. Justice Story said: "There must be a positive repugnancy between the provisions of the new laws and those of the old; and, even then, the old law is repealed by implication only pro tanto to the extent of the repugnancy." In McCool v. Smith, Mr. Justice Swayne, quoting Mr. Sedgwick, said: "A repeal by implication is not favored." "The leaning of the courts is against the doctrine, if it be possible to reconcile the two acts of the legislature together." Mr. Dwarris says: "Every affirmative statute is a repeal of a precedent affirmative statute when its matter necessarily implies a negative, but only so far as it is clearly and indisputably contradictory and contrary to the former act in the very matter (Foster's Case), and the repugnancy such that the two acts cannot be reconciled."

A citation of these authorities was hardly necessary to support the argument in this case. The provisions of the act of 1875, and those of subdivision 3, have been shown to be perfectly consistent. The latter, therefore, must be held to remain unrepealed without invoking any technical rule of construction, or relying on the disfavor in which the courts hold implied repeals; but I have not thought such citation entirely out

of place, since, if doubt remains in the mind of any one after reading the preceding abstract decision, it must be dispelled on considering the authorities.

Let an order be entered overruling the plaintiff's motion.

COOKE (GRAHAME v.). See Case No. 5,678.

COOKE (HARPER v.). See Case No. 6,086.

COOKE (MAYOR & COMMONALTY v.). See Case No. 9,358.

## Case No. 3,174.
### COOKE v. MYERS.
[1 Cranch, C. C. 6.][1]
Circuit Court, District of Columbia. April Term, 1801.

ACTION AGAINST ASSIGNEE OF LEASE—PROOF OF ASSIGNMENT.

In debt, by the lessor against the assignee of the lessee, the plaintiff is not bound to show an assignment by deed acknowledged or proved and recorded agreeably to the fourth section of the act of 13th December, 1792, "for regulating conveyances."

Debt for rent, by [Stephen Cooke] lessor against [William Myers] assignee of lessee.

The plaintiff produced a paper signed by the defendant, in which he agreed to take the residue of Thompson's lease, and bound himself to Thompson in the penal sum of —— to pay all the rents which should become due to the plaintiff, Dr. Cooke, upon his lease to Thompson.

Mr. Swann, for defendant, objected that it was not competent evidence to prove an assignment from Thompson to Myers. and cited the act of assembly, p. 165 (Ed. 1803, p. 157).

Mr. Simms, for plaintiff, cited 1 Esp. 247 (Large Ed. 220); Cotes v. Wade, 1 Lev. 190; Pitt v. Russel, 3 Lev. 19; and Watson v. Alexander, 1 Wash. [Va.] 351,—and insisted that the paper produced was in this case evidence proper and competent to go to the jury, to prove an assignment; and of such opinion was THE COURT.

Mr. Swann took a bill of exceptions, but never carried the cause to the supreme court.

## Case No. 3,175.
### COOKE v. MYERS.
[1 Cranch, C. C. 166.][1]
Circuit Court, District of Columbia. June Term, 1804

COSTS OF MOTION.

Upon a judgment on motion upon a replevy bond for rent, the plaintiff is entitled to costs of the motion.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Motion on a replevy bond for rent. The rents were attached in the hands of the tenant at the time of the distress. The bond included costs of distress.

Mr. Youngs, for the defendant, contended that no costs could be given upon this motion, the plaintiff having released the costs of distress.

Judgment for the amount of rent due, and costs of this motion; the plaintiff having released the costs of the distress.

## Case No. 3,176.

COOKE et al. v. NEW YORK CENT. & H. R. R. CO.

[4 Ban. & A. 398;[1] 16 O. G. 856.]

Circuit Court, N. D. New York. July, 1879.

PATENTS—"RAILWAY SWITCH"—ANTICIPATION.

A patent for a railway switch, in the claims of which an important element is the rail sections used to guide the wheels from the back to the flange-supporting block, in an easy manner without any jarring or abrupt change of motion, and in a proper direction for the wheels to drop into the main track at the proper point, is not anticipated by a prior switch which had no rail-section or equivalent therefor.

[In equity. Suit by Charles L. Cooke and others against the New York Central & Hudson River Railroad Company to restrain alleged infringement of reissued letters patent No. 7,690, granted to plaintiffs May 22, 1877. The original patent was granted to C. L. Cooke November 21, 1871, and is numbered 121,158.]

Bowen, Rogers & Locke, for complainants.
J. Thomas Spriggs, for defendant.

BLATCHFORD, Circuit Judge. This suit is brought on reissued letters patent granted to the plaintiffs May 22d, 1877, for an improvement in railway-switches, the original patent having been granted to said Cooke, November 21, 1871.

The specification of the reissue says: "My invention relates to that class of switches which are provided with a device for preventing the wheels from running off the rails to the ground, when the switch has been improperly placed. The object of my invention is to construct a safety-switch of this class, which shall guide the wheels upon the track in a natural and easy manner, without any sudden or abrupt changes of motion, and which shall be constructed of substantially the same material of which the main track is composed, so as to avoid injury to or breakage of the wheels as they pass over the switch.

"The nature of my invention will be fully understood from the following description: In the accompanying drawing, Figure 1 is

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

a top plan view of a switch provided with my improvements. Fig. 2 is a detached perspective view of the flange-supporter. Fig. 3 is a fragmentary cross-section in line x x, Fig. 1. Like letters of reference refer to like parts in each of the figures.

"A, A, represent the rails of the main track, and A', A', the main switch-rails, forming continuations thereof. B, B, represent the rails of the siding, connected with rails A', A', by rod C, operated by a lever O in

*Fig. 1*

the usual manner, so that the free ends of either the rails A', A', or B, B, may be placed opposite the main rails A, A. D represents two pointed rails arranged on the inner side of the main rails A, A, so as to form a continuation of the inner switch-rails. E represents the flange-supporting blocks arranged on the outer side of the main rails A, and F, a rail section forming a continuation of the outer switch-rails and abutting against the flange-supporter E. The latter is preferably composed of a wooden body secured to the